QUINN EMANUEL URQUHART OLIVER & HEDGES, LLP
  Victoria F. Maroulis (Bar No. 202603)
  R. Tulloss Delk (Bar No. 229442)
555 Twin Dolphin Drive, Suite 560
Redwood City, CA  94065
(650) 620-4500
(650) 620-4555 (Facsimile)
Email: victoriamaroulis@quinnemanuel.com
       tullossdelk@quinnemanuel.com

JENNER & BLOCK LLP
  Donald R. Harris (Admitted *Pro Hac Vice*)
  Stanley A. Schlitter (Admitted *Pro Hac Vice*)
  Terrence J. Truax (Admitted *Pro Hac Vice*)
  John E. Titus (Admitted *Pro Hac Vice*)
One IBM Plaza
Chicago, IL  60611
(312) 222-9350
(312) 527-0484 (Facsimile)
Email:  dharris@jenner.com
        sschlitter@jenner.com
        ttruax@jenner.com
        jtitus@jenner.com

Attorneys for Plaintiff Semiconductor Energy
Laboratory Co., Ltd.

**IN THE UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| SEMICONDUCTOR ENERGY LABORATORY CO., LTD.,<br>    Plaintiff,<br><br>  vs.<br><br>CHI MEI OPTOELECTRONICS CORP. ET AL.<br>    Defendants.<br><br>CHI MEI OPTOELECTRONICS CORP.<br>    Counterclaim Plaintiff,<br><br>  vs.<br><br>SEMICONDUCTOR ENERGY LABORATORY CO., LTD.,<br>    Counterclaim Defendant. | CASE NO.  C04-04675 MHP<br><br>**SEMICONDUCTOR ENERGY LABORATORY CO. LTD.'S MOTION TO STRIKE THE EXPERT REPORT OF GERALD MOSSINGHOFF; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:     December 4, 2006<br>Time:      2:00 p.m.<br>Place:    The Courtroom of the Honorable<br>          Judge Patel |


1 TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

2    PLEASE TAKE NOTICE that on December 4, 2006 at 2:00 p.m., or as soon thereafter as
3 counsel may be heard, in Courtroom 15 of the above-identified Court, located at 450 Golden
4 Gate Avenue, San Francisco, California, 94102, plaintiff Semiconductor Energy Laboratory Co.,
5 Ltd. ("SEL") will, and hereby does, move to strike the expert report of Gerald Mossinghoff
6 submitted by defendant Chi Mei Optoelectronics Corp. because CMO never plead the
7 inequitable conduct defense which is the subject of the report and affirmatively represented to
8 SEL that it was not asserting such a defense.

9    By this motion, SEL hereby requests that this court strike the expert report of Gerald
10 Mossinghoff. This motion is based upon the Notice of Motion, the succeeding Memorandum of
11 Points and Authorities, the Declaration of Stanley A. Schlitter ("Schlitter Decl.") and the exhibits
12 attached hereto, the papers and pleadings on file in this action, such other evidence and argument
13 as may be presented at or before the hearing on this motion, and all matters of which this Court
14 may take judicial notice.

15 **<u>MEMORANDUM OF POINTS AND AUTHORITIES</u>**

16 **I.    INTRODUCTION**

17    A year and a half ago, CMO confirmed that it was ***not*** asserting an inequitable conduct
18 defense when it informed SEL that "there are no defenses that defendants are asserting that
19 involve a requirement to plead with particularity, such as a defense based on inequitable
20 conduct." *See* Declaration of Stanley A. Schlitter ("Schlitter Decl."), Exh. 5, May 17, 2005
21 Letter to S. Mosko; Schlitter Decl., ¶6. Despite multiple opportunities to do so in the eighteen
22 months of ensuing fact discovery, CMO never changed its position. Specifically, CMO never
23 amended its counterclaim to allege inequitable conduct, nor did CMO supplement its answer to
24 SEL's first interrogatory directed to inequitable conduct or supplement a response to several
25 other interrogatories directed to CMO's defenses and counterclaims, which would have included

28 SEMICONDUCTOR ENERGY LABORATORY CO., LTD.'S MOTION TO STRIKE THE EXPERT REPORT OF GERALD
MOSSINGHOFF; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. C04-04675 MHP

any claim of inequitable conduct. Thus, when fact discovery closed, inequitable conduct was not, and it is not now, even colorably an issue in this case.

Nevertheless, on October 16, 2006, CMO submitted the expert report of Gerald Mossinghoff ("the Mossinghoff report") in which CMO alleges for the very first time that SEL committed inequitable conduct. Tellingly, Mossinghoff's report relies on no evidence uncovered during eighteen months of discovery -- there is not a single citation to any SEL interrogatory response, deposition transcript or document. On the contrary, every allegation leveled by Mossinghoff was available to CMO when it confirmed that it was not asserting inequitable conduct eighteen months ago. Instead of timely presenting those allegations, however, CMO concealed them, waiting until after the date for closing fact discovery on these issues to even identify an inequitable conduct expert. The only conceivable reason for CMO to conceal its defense for more than one year is to create a staggering amount of work (as described in detail below) with the hope of delaying the case and the inevitable finding of infringement against CMO's products.

Because everything contained in the Mossinghoff report should have been disclosed in CMO's pleadings and discovery responses, but was concealed by CMO instead, CMO should not be "permitted to use as evidence at trial" anything in Mossinghoff's report. *See* Fed.R.Civ.P. 37(c)(1). CMO had a year and a half to put SEL on notice of the eight prior art references and twenty complicated and detailed patent file histories it intended to rely on; it never did so. By contrast, due to CMO's dilatory tactics, SEL has just thirty days to respond to this defense fully on the merits. CMO's tactics are inexcusably prejudicial to SEL. The Court should strike the Mossinghoff report because it (1) is directly contrary to CMO's representation that it would not assert an inequitable conduct defense prejudicing SEL's ability to respond to the report, and (2) falls wholly outside CMO's pleadings and interrogatory responses.

## II. STATEMENT OF FACTS

### A. CMO Intentionally Concealed Its Inequitable Conduct Defense for More Than Eighteen Months Until After The Close of Fact Discovery.

Over the last year and a half, CMO passed up several opportunities to plead or otherwise identify the inequitable conduct defense asserted in the Mossinghoff report. Indeed, in response to a direct request concerning any potential inequitable conduct defense, CMO confirmed that it would ***not*** assert such defense at all. *See* Schlitter Decl., Exh. 5, May 17, 2005 Letter to S. Mosko; Schlitter Decl., ¶6.

In February 2005, CMO filed a counterclaim alleging in conclusory fashion that the patents-in-suit were "invalid or unenforceable for failure to meet the requirements of one or more sections of Title 35, United States Code and Title 37, Code of Federal Regulations." *See id.*, Exh. 1, CMO's Answer to Complaint. CMO did not plead any particular facts relating to unenforceability, much less inequitable conduct. Seeking to explore CMO's unenforceability allegations, SEL served its first interrogatory asking CMO to set forth "all facts related to CMO's counterclaim for a declaratory judgment that the SEL patents are unenforceable." *See id.,* Exh. 2, SEL's First Set of Interrogatories to CMO. Instead of identifying any of the alleged facts and materials relied on in the Mossinghoff report, CMO's response simply stated (other than objections): "Because the patents in suit are invalid, they are necessarily unenforceable." *See id.,* Exh. 3; CMO's Responses to SEL's First Set of Interrogatories. CMO's responses did not mention inequitable conduct. *See id.*

In light of this interrogatory response, SEL again attempted to explore CMO's unenforceability allegations in an April 19, 2005 letter. In that letter, SEL explained that the pleading requirements of the Federal Rules required CMO to provide the sought-after bases for CMO's inequitable conduct theory. *See id.* Exh. 4, April 19, 2005 Letter to S. Mosko. During the parties' telephonic conference that followed on May 2, 2005 to discuss the matter, CMO could not have been clearer that it was not asserting an inequitable conduct defense. SEL

confirmed CMO's intention in writing: "<u>*We understood [CMO] to confirm that there are no defenses that defendants' [sic] are asserting that involve a requirement to plead with particularity, such as a defense based on inequitable conduct.*</u>" *See id.* ¶ 6; Exh. 5, May 17, 2005 Letter to S. Mosko confirming the content of the discussion; emphasis added. CMO never responded to or contradicted SEL's understanding.

CMO was obligated to identify or articulate its inequitable conduct defense in response to numerous other discovery requests throughout fact discovery, but CMO repeatedly failed to do so as fact discovery continued. For example, SEL served several other interrogatories directed generally to CMO's defenses and counterclaims, which would have included an inequitable conduct defense:

- Interrogatory No. 12 asking CMO to "explain in detail all bases for your contentions" with respect to "each asserted claim that you contend is unenforceable." *See id.* Exh. 6, SEL's Third Set of Interrogatories to CMO. CMO objected to, but otherwise did not respond to, the interrogatory. *See id.* Exh. 7 CMO's Response to SEL's Third Set of Interrogatories, Response to Interrogatory No. 12 (filed under seal).

- Interrogatory No. 18 asking CMO to "[d]escribe all facts and supporting information related to CMO's Affirmative Defenses." *See id.*, Exh. 8, SEL's Fourth Set of Interrogatories to CMO. CMO objected to, but otherwise did not respond to, the interrogatory. S*ee id.* Exh. 9, CMO's Response to SEL's Fourth Set of Interrogatories to CMO, Interrogatory No. 18 (filed under seal).

- Interrogatory No. 19 asking CMO to "[d]escribe all facts and supporting information related to CMO's allegations in its counterclaim for declaratory judgment against SEL." *See id.* Exh. 8, SEL's Fourth Set of Interrogatories to CMO. CMO objected to, but otherwise did not respond to, the interrogatory. *See id.* Exh. 9, CMO's Response to SEL's Fourth Set of Interrogatories, Response to Interrogatory No. 19.

CMO never answered or supplemented the foregoing interrogatory responses and never amended its answer or counterclaim to plead inequitable conduct with specificity or even to mention inequitable conduct at all.

CMO continued to "hide the ball" through the end of fact discovery on these issues. Even though fact discovery on these issues was to close on September 15, 2006, SEL allowed CMO to take certain depositions after that date to accommodate the parties' scheduling issues.

While those depositions proceeded on September 27, 2006, CMO identified Mossinghoff as an expert, and during a "meet-and-confer" on various unrelated issues that same week, CMO announced for the first time that it intended to submit an expert report on inequitable conduct. Of course, CMO had not amended its pleading or otherwise provided any specificity concerning its inequitable conduct defense.

### B. The Information Relied On by Mossinghoff Was Available to CMO During The Time It Concealed The Inequitable Conduct Defense.

On October 16, 2006, one month after the date for the close of fact discovery, CMO submitted Mossinghoff's Expert Report. *See id.* Exh. 11, Mossinghoff Expert Report. Mossinghoff's expert report identifies eight allegedly material prior art references that SEL allegedly withheld from the USPTO. *See id.* All eight prior art references, as well as the fact that each reference was not cited during prosecution of the patents-in-suit, was public information available to CMO when it confirmed that it would not assert an inequitable conduct defense. In an effort to impute knowledge of these references to SEL, Mossinghoff relies on the prosecution histories of twenty SEL patents that are not in suit, every one of which was available to CMO when it confirmed that it would not assert an inequitable conduct defense. Moreover, Mossinghoff does not rely on any deposition testimony of any SEL inventor or patent attorney concerning either the references or the relevant prosecution history files, or any deposition testimony of any other witness for that matter. Similarly, Mossinghoff does not rely on any discovery materials such as SEL documents or discovery responses. In short, Mossinghoff does not make a single allegation that was not available to CMO when it confirmed that it would not assert an inequitable conduct defense at all.

Responding to Mossinghoff's report in such short time would be extremely difficult. For example, none of the eight prior art references relied on by Mossinghoff can be material if it is cumulative to the references already considered by the USPTO during the prosecution of the patents-in-suit. Thus, to respond to CMO's assertion of inequitable conduct, SEL would need to

5

compare each of the eight references to the prior art references of record in the USPTO, as follows:

- SEL must compare, on a claim limitation-by-claim limitation basis, each of the three references allegedly withheld during the prosecution of the '258 patent against each of the 115 references cited in that prosecution;

- SEL must compare, on a claim limitation-by-claim limitation basis, each of the three references allegedly withheld during the prosecution of the '995 patent against each of the 27 references cited during that prosecution; and

- SEL must compare, on a claim limitation-by-claim limitation basis, each of 2 references allegedly withheld during the prosecution of the '480 patent against each of the 8 references cited during that prosecution.

Consequently, SEL would need to perform more than 500 separate comparisons of references relied on by Mossinghoff with references that were before the USPTO. What is more, SEL would have to examine every one of the twenty file histories mentioned in the Mossinghoff report to ascertain the context in which each reference was cited.

Had CMO complied with the pleading rules and its discovery obligations, SEL could have begun the vast majority of this work a year and a half ago. All CMO had to do was to put SEL on notice of the references (all eight of which were available to CMO) and twenty file histories. Instead, CMO confirmed that it would not assert an inequitable conduct defense in May 2005 and concealed its true intention to assert this defense from SEL for the remainder of fact discovery over the next year and a half.

### III. ARGUMENT

#### A. MOSSINGHOFF'S REPORT SHOULD BE STRIKEN BECAUSE CMO FAILED TO PLEAD INEQUITABLE CONDUCT AND REPEATEDLY STATED THAT IT WAS NOT ASSERTING SUCH A DEFENSE

A party must plead inequitable conduct with particularity. *See* Fed.R.Civ.P. 9(b); *Optical Coating Lab., Inc. v. Applied Vision, Ltd.*, 1995 WL 150513 *3, No. C-92-4689-MHP (March 20, 1995 N.D.Cal. 1995) ("This court previously has held that a plain reading of the Federal Rules, the weight of authority, and sound public policy all require that pleadings which allege inequitable conduct before the PTO comply with Rule 9(b).") (internal citations omitted). CMO

has never pled this claim, and for that reason alone, the Mossinghoff report, which is solely directed to CMO's assertion of an inequitable conduct defense, should be stricken.

Having failed to plead inequitable conduct, CMO embarked on an eighteen month charade in which it repeatedly informed SEL that it was not asserting an inequitable conduct defense. As discussed above, SEL repeatedly attempted to discover the bases for CMO's unenforceability claims, including any inequitable conduct defenses. SEL's very first interrogatory in this case sought information from CMO concerning unenforceability, including any inequitable conduct allegations. *See* Schlitter Decl., Exh. 2, SEL's First Set of Interrogatories to CMO. CMO's response made no mention of inequitable conduct. *See* Schlitter Decl., Exh. 3, CMO's Response to SEL's First Set of Interrogatories. As noted above, in order to be clear on this point, SEL engaged CMO in a discussion concerning inequitable conduct which led SEL to write to CMO: "We understood [CMO] to confirm that there are no defenses that defendants' [sic] are asserting that involve a requirement to plead with particularity, such as a defense based on inequitable conduct." *See id.* ¶ 6*;* Exh. 5 May 17, 2005 Letter to S. Mosko. CMO never took issue with SEL's understanding.

Not only did CMO never respond to or contradict SEL's understanding, during the seventeen months following SEL's explanation of its understanding, CMO continued to perpetuate that understanding. SEL served three other interrogatories seeking to identify the bases of any and all of CMO's defenses, which could include any inequitable conduct defense. In June and August of 2006, SEL served interrogatories seeking information about CMO's affirmative defenses, its counterclaims and its claims that the patents-in-suit were unenforceable. *See id.*, Exh.6, SEL's Third Set to CMO's Interrogatory No. 12; Exh. 8, SEL's Fourth Set of Interrogatories to CMO, Interrogatory Nos. 18-19. SEL sent correspondence to CMO imploring answers to these interrogatories, but again, CMO provided no inequitable conduct information. *See id.,* Exh. 12, August 2, 2006 Letter to R. Unikel and Y. Mikulka. CMO refused to answer these interrogatories and certainly did not provide any information concerning an inequitable

7
SEMICONDUCTOR ENERGY LABORATORY CO., LTD.'S MOTION TO STRIKE THE EXPERT REPORT OF GERALD MOSSINGHOFF; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. C04-04675 MHP

conduct defense. *See id.* Exh. 7, CMO's Response to SEL's Third Set of Interrogatories, Response to Interrogatory No. 12; Exh. 9, CMO's Response to SEL's Fourth Set of Interrogatories, Response to Interrogatory Nos. 18-19.  Based on CMO's clear response more than seventeen months ago, and its continued adherence to that position, SEL prepared its case assuming CMO would not assert an inequitable conduct defense.

The first time CMO provided any indication that it might assert an inequitable conduct defense was just a few weeks ago on September 27, 2006 -- after the date by which fact discovery on these issues was supposed to close (although the parties agreed that certain discovery would continue after that date).  On that date, counsel for CMO identified Mossinghoff as an expert and indicated that Mossinghoff was going to provide an expert report on inequitable conduct. *See id.*, Exh. 10, September 27, 2006 Letter to T. Truax.

The timing of CMO's assertion of this defense inevitably prejudice SEL, namely, by making it more difficult for SEL to respond to the accusations and possibly delaying the litigation and the inevitable finding of infringement of CMO's products. *See Optical Coating Lab.*, 1995 WL 150513 at *4 ("AVL's allegation reeks of just the sort of '[s]pecious allegations of inequitable [that are] deployed as a delaying tactic, as an attempt to confuse the issues or mislead the court, or as a tool to generate more fees or make the case more expensive for an opponent to try to settle.'").  Such tactics are impermissible, and the Court should strike Mossinghoff's report.

Finally, CMO cannot credibly argue that its late assertion of this defense was predicated on a need to take discovery from SEL on these issues.  As discussed above, each of the eight prior art references Mossinghoff relies upon were publicly available when this case began almost two years ago.  Moreover, the twenty SEL patent prosecution histories which Mossinghoff relies on to assert that SEL knew of the eight prior art references were available when this case began.  All of this information was publicly available to CMO and it should have raised these alleged bases in pleading its affirmative defenses or in its answers to interrogatories.  More importantly,

8
SEMICONDUCTOR ENERGY LABORATORY CO., LTD.'S MOTION TO STRIKE THE EXPERT REPORT OF GERALD MOSSINGHOFF; MEMORANDUM OF POINTS AND AUTHORITIES
Case No. C04-04675 MHP

Mossinghoff's report is wholly devoid of reference to any deposition testimony, including of the inventors and patent attorneys involved in the prosecution of the patents-in-suit. In other words, Mossinghoff's report does not rely on facts learned through discovery from SEL.

### B.  SEL Would Be Unduly Prejudiced If the Court Does Not Strike Mossinghoff's Report.

CMO's untimely assertion of inequitable conduct severely prejudices SEL's preparation of its case. Responding to Mossinghoff's report would be a gargantuan task. As noted above, in order to show that the prior art cited in the Mossinghoff report is cumulative of the prior art of record in the patents-in-suit -- and, therefore, SEL did not have to disclose the art to the USPTO -- SEL would have to compare the prior art cited by Mossinghoff to nearly 150 references of records. CMO has had this information available to it for almost two years. During those two years, CMO had the opportunity to prepare its analysis, do whatever comparisons it felt were necessary, and arrange for Mossinghoff to author his report. CMO's untimely assertion of this the defense leaves SEL with thirty days to do the same amount of work. Again, such tactics are impermissible and Mossinghoff's report should be stricken. *See Optical Coating Lab.*, 1995 WL 150513 at *4 (explaining that specious allegations of inequitable conduct as, among other things, a delay tactic are impermissible).

This Court should not allow SEL to be prejudiced by CMO's inexcusable delay in asserting the inequitable conduct defense.

### IV.  MEET AND CONFER

The parties have met and conferred on this issue and were not able to reach agreement. During the meet-and-confer held on October 25, 2006, counsel for CMO disclosed its intention to file a Motion to Amend its Answer to include an inequitable conduct defense.

### V.  CONCLUSION

For all the foregoing reasons, this Court should strike the expert report of Gerald Mossinghoff submitted by Chi Mei Optoelectronics Corp.

The electronic filer hereby attests that the individual whose name appears below has signed this document.  See General Order 45, Section X.

Dated:  October 25, 2006

    Victoria F. Maroulis
    R. Tulloss Delk
    QUINN EMANUEL URQUHART
    OLIVER & HEDGES, LLP

    Donald R. Harris
    Stanley A. Schlitter
    Terrence J. Truax
    John Titus
    JENNER & BLOCK LLP


By:   /s/ Donald R. Harris
    Attorneys for Plaintiff Semiconductor
    Energy Laboratory Co., Ltd.