UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SEMICONDUCTOR ENERGY
LABORATORY COMPANY LTD

        Plaintiff,

  v.

CHI MEI OPTOELECTRONICS CORP., et al.,

        Defendant(s).
_____/

No. C 04-04675 MHP

**MEMORANDUM & ORDER**
Re: Defendants' Motions to Amend Answers and Counterclaims; Plaintiff's Motion to Strike Expert Report

      Defendants Chi Mei Optoelectronics Corp. ("CMO"), International Display Technology Co., Ltd., International Display Technology USA, Inc., and Westinghouse Digital Electronics, LLC (collectively "defendants") have filed four substantively identical motions to amend their answers and counterclaims. Defendants seek to add the affirmative defenses of license, equitable estoppel, and patent invalidity due to inequitable conduct, to plead additional facts related to their previously pled defenses of laches and patent misuse, and to delete previously pled affirmative defenses related to claims that have since been dismissed. Plaintiff Semiconductor Energy Laboratory Co. Ltd. ("plaintiff") opposes the motions. Relatedly, plaintiff moves to strike the expert report of Gerald Mossinghoff, which defendants have submitted in support of their inequitable conduct claims. Having considered the parties' arguments and for the reasons stated below, the court enters the following memorandum and order.

BACKGROUND

Plaintiff filed this action on November 3, 2004, asserting claims for patent infringement. Defendants filed their original answers and counterclaims on February 28, 2005. On August 11, 2006, the parties filed a stipulation that all claims and defenses related to one of the asserted patents be dismissed with prejudice. This is the first time defendants have sought to amend their answers and counterclaims.

The fact discovery cutoff was September 15, 2006, and expert discovery cutoff was December 18, 2005. However, the parties agreed to take—and did take—additional factual depositions in September and October 2006. Defendants deposed Eric J. Robinson, plaintiff's patent attorney, on September 8, 2006. Defendants deposed Norihiko Seo, Nobuaki Kimura, and Akira Takenouchi, plaintiff's licensing representatives, during the last week of September 2006. Defendants also deposed Shumpei Yamazaki, plaintiffs' president and the named inventor on two of the patents in suit, on August 24–27, 2006, near the close of fact discovery. In addition, complete documentary evidence related to plaintiff's licensing agreements was not produced until mid-September 2006, after the parties resolved a discovery dispute related to the scope of the production. As of the date of this motion no expert depositions have been taken.

Defendants claim that the depositions taken in August and September 2006, together with the non-redacted license agreements produced in September 2006, revealed previously unknown facts that lend further support to certain of defendants' existing defenses and support additional affirmative defenses that have not been pled. Specifically, defendants assert that the testimony of Yamazaki and Roberts revealed, for the first time, that Yamazaki and Roberts knew of certain prior art references and information related to the field of the invention that were improperly withheld from the U.S. Patent Office. In addition, defendants assert that the newly discovered identities of plaintiff's licensees (which remain confidential), combined with recent testimony from plaintiff's licensing representatives, support a new allegation that defendants are not liable based on existing licenses. Defendants further assert that the testimony of the licensing agents, together with plaintiff's damages expert report dated October 16, 2006, reveals that plaintiff is seeking improper

licensing arrangements and demanding improper royalties, giving rise to a proposed new defense of patent misuse. Finally, defendants claim that the licensing representatives' testimony lends additional factual support to the defenses of equitable estoppel and laches.

During a September 27, 2006 face-to-face conference regarding defendants' affirmative defenses, plaintiff's counsel requested that defendants provide additional discovery responses regarding patent misuse and laches, but stated that the forthcoming report of Gerald Mossinghoff, one of defendants' experts, would be sufficient to satisfy this request. Unikel Dec. ¶ 3. Plaintiff asserts that this was the first time defendants identified Mossinghoff as an expert or raised the issue of an expert report regarding inequitable conduct. On October 6, plaintiff's counsel confirmed its position by letter, coupled with an explicit reservation of rights regarding all of defendants' affirmative defenses and counterclaims. Id. ¶ 4. Defendants served their supplemental discovery responses on October 13, 2006 related to equitable estoppel, laches and patent misuse. Mikulka Dec., Exh. 11. Defendants had also made it clear that they were pursuing an inequitable conduct defense at least as early as June 20, 2006, when they served and filed a letter brief regarding discovery disputes that specifically identified defendants' inequitable conduct defense as a grounds for the relevance of one of its outstanding interrogatories. Id., Exh. 15. Mossinghoff's report was issued on October 16, 2006.

As detailed in its Motion to Strike Mossinghoff's expert report, plaintiff claims that defendants intentionally concealed their inequitable conduct defense for more than eighteen months, asserting it only after the close of discovery. In its initial response to plaintiff's first set of interrogatories, CMO stated that the patents were unenforceable because they were invalid, and that CMO would supplement the response when discovery was complete. Schlitter Dec., Exh. 3. As defendants acknowledge, defendants never provided specific information regarding inequitable conduct via discovery responses, due in part to an alleged understanding between the parties that such information would be provided via Mossinghoff's report. Plaintiff also cites correspondence by plaintiff's counsel dated May 17, 2005 purporting to confirm defense counsel's representation that they were not pursuing an inequitable conduct claim. Schlitter Dec., Exh. 5. In addition to this

3

allegedly dilatory conduct on the part of defendants, plaintiff asserts that the information supporting defendants' proposed inequitable conduct claim were known to them early in the litigation, and therefore this late amendment is inappropriate.  Plaintiff likewise faults defendants for failing to disclose information related to their other defenses until after the close of fact discovery.

LEGAL STANDARD

The Federal Rules of Civil Procedure provide that leave to amend be "freely given when justice so requires." Fed. R. Civ. Pro. 15(a).  The Ninth Circuit has construed this broadly, requiring that leave to amend be granted with "extraordinary liberality." Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990); see also DCD Programs, Ltd. v. Leighton, 833 F.2d 183, 186 (9th Cir. 1987) (Rule 15's policy of favoring amendments to pleadings should be applied with "extreme liberality"); Advanced Cardiovascular Sys., Inc. v. SciMed Life Sys., Inc., 989 F. Supp. 1237, 1241 (N.D. Cal. 1997) (Jensen, J.) ("[T]he court must be very liberal in granting leave to amend"); Poling v. Morgan, 829 F.2d 882, 886 (9th Cir. 1987) (describing a "strong policy permitting amendment").

Despite this liberal policy of amendment, courts must consider "four factors relevant to whether a motion for leave to amend pleadings should be denied: undue delay, bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." United States v. Webb, 655 F.2d 977, 980 (9th Cir. 1981); see also Poling, 829 F.2d at 886.  The enumerated factors are not of equal weight and delay alone is insufficient to deny leave to amend. Id. (citing Howey v. United States, 481 F.2d 1187 (9th Cir. 1973)).  By the same token, "[p]rejudice to the opposing party is the most important factor." Jackson v. Bank of Hawaii, 902 F.2d 1385, 1387 (9th Cir. 1990).  The party opposing leave to amend bears the burden of showing prejudice. DCD Programs, 833 F.2d at 187.

DISCUSSION

I.   Motion for Leave to Amend

The four factors relevant to whether defendants' motions should be denied are "undue delay,

4

bad faith or dilatory motive, futility of amendment, and prejudice to the opposing party." Webb, 655 F.2d at 980. (9th Cir. 1981); see also Poling,829 F.2d at 886. Delay alone is insufficient to deny leave to amend. Id. "Prejudice to the opposing party is the most important factor." Jackson, 902 F.2d at 1387. The party opposing leave to amend bears the burden of showing prejudice. DCD Programs, 833 F.2d at 187.

### A.     Undue Delay

"Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." Jackson, 829 F.2d at 1388. Plaintiff asserts that defendants have unduly delayed in seeking to amend because (1) all of the information supporting the inequitable conduct defense has been known to defendants for over a year and a half, (2) the facts underlying the equitable estoppel, laches and license defenses should have been known to CMO in 2001 when it was copied on correspondence it seeks to submit as evidence, and (3) defendants should have been aware of the facts underlying their patent misuse defense based on the licenses they received in discovery in 2005. Plaintiff further asserts that the delay is exacerbated by defendants' "repeated failure to cure deficiencies by previous amendments," claiming that defendants had ample opportunity to amend their answers and counterclaims throughout the litigation. Finally, plaintiff faults defendants for waiting several additional weeks after Mossinghoff's report was issued on October 16, 2006 before filing this motion.

Plaintiff's argument is unconvincing. While the documentary evidence may have been previously known to defendants, the full significance of these documents was not apparent until after defendants were able to obtain testimony regarding the documents in Fall 2006. Only then were defendants able to sufficiently formulate their additional defenses for inclusion in amended answers and counterclaims. For this reason, too, defendants did not waste previous opportunities to make amendments. With respect to inequitable conduct in particular, defendants would not have been able to plead inequitable conduct with sufficient specificity prior to obtaining witness testimony and without falling afoul of Federal Rule of Civil Procedure 11. See Optical Coating Lab., Inc. V.

Applied Vision, Ltd., No. C-92-4689 MHP, 1995 WL 150513, at *4 (N.D. Cal. Mar. 20, 1995) (Patel, J.) (holding that pursuing an inequitable conduct claim without a specific factual basis raised the specter of Rule 11 sanctions for having pled the claim). The court likewise does not find the delay of less than a month between Mossinghoff's report (October 16) and defendants' motion to amend (November 14) to be unduly long. Accordingly, there is no undue delay.

### B.    Bad Faith or Dilatory Motive

Plaintiffs claim that defendants have a dilatory motive based on defendants' failure to amend earlier, their failure to respond to discovery requests regarding inequitable conduct, and their inclusion of twenty-three additional prior art references in their proposed amended answers and counterclaims. The record indicates, however, that defendants did not provide specific responses to discovery requests concerning inequitable conduct because they were in the process of developing a factual basis for their purported claim. As discussed above, defendants could not have provided any specificity prior to questioning the inventor and plaintiff's patent counsel regarding their conduct related to prosecution. The court therefore does not find that defendants have acted with bad faith or a dilatory motive.

### C.    Futility of Amendment

Plaintiff does not explicitly raise an argument that allowing defendants to amend their answers and counterclaims would be futile. The court considers this factor to be of significant importance, and plaintiff's counsel's response to the court's questions on this factor were no more helpful than their pleadings. Plaintiff does suggest that defendants' proffered evidence does not support their proposed defenses. While the court may question some of defendants' inferences, these factual disputes need not be resolved at this stage. The court finds that any factual defects in defendants' evidence do not render their proposed defenses futile, and as plaintiff failed to specifically argue this point this factor weighs heavily in favor of allowing amendment.

D.     Prejudice

Plaintiff asserts prejudice on two grounds. First, plaintiffs claim that allowing defendants to proceed with their inequitable conduct claim would add a total of 31 new prior art references (eight through Mossinghoff's report and 23 through the amended answers and counterclaims), and that analyzing these references in the seven months before trial would be a "gargantuan task." In addition, plaintiff asserts that it will not be able to engage in sufficient discovery regarding defendants' new defenses because fact discovery has closed. In particular, plaintiff claims that additional discovery would be required to determine whether defendants' products were covered by the licenses at issue, and to explore defendants' purported reliance in the context of the equitable estoppel and laches claims. Putting plaintiff "through the time and expense of continued litigation on a new theory, with the possibility of additional discovery," may constitute undue prejudice. Ascon Properties, Inc. v. Mobil Oil Co., 866 F.2d 1149, 1161 (9th Cir. 1989) (citation omitted).

Defendants respond that plaintiffs have always been on notice of the equitable estoppel and patent misuse defenses because these defenses were pled in the original answer, and that defendants notified plaintiff of their intent to bring their new defenses as soon as the possibilities arose. Defendants further respond that all of the prior art references included in Mossinghoff's report and the proposed amended answers and counterclaims were previously included in defendants' invalidity contentions, and thus plaintiffs would have to engage in substantial analysis of the references regardless of whether defendants were allowed to cite the references in support of their inequitable conduct claims. Defendants also assert that, in any case, such a burden would not constitute prejudice for the purposes of the Federal Rules. Regarding plaintiff's discovery argument, defendants assert that, on November 15, 20 and 21, after defendants filed their motions to amend, plaintiff deposed defense witnesses who would have had knowledge regarding reliance, and therefore any prejudice in that regard has been manufactured by plaintiff by choosing not to ask the pertinent questions.

The court does not find that the requirement of analyzing prior art references constitutes undue prejudice. Furthermore, any difficulties related to additional discovery can be alleviated

simply by keeping fact discovery open, and by imposing upon defendants all costs related to any duplicative discovery. Plaintiff has therefore not born its burden of showing that it would be unduly prejudiced by defendants' amended answers and counterclaims.

Accordingly, defendants' motions for leave to amend will be granted, subject to certain provisions as detailed below.

## II.  Motion to Strike

Plaintiff's arguments in support of its motion to strike Mossinghoff's expert report are similar to its arguments against granting defendants leave to pursue their inequitable conduct defenses. Plaintiff argues that Mossinghoff's report should be stricken because defendants have indicated that they did not intend to pursue inequitable conduct, because the information on which Mossinghoff relies has been available to defendants throughout the litigation, and because plaintiff would be prejudiced if required to respond to Mossinghoff's report. In addition to the asserted prejudice arising from the need to analyze Mossinghoff's prior art references, plaintiff asserts that its own experts had insufficient time to respond to Mossinghoff's report within the time allotted for rebuttal reports. The court finds no greater prejudice regarding Mossinghoff's report than it does regarding defendants' proposed amended answers and counterclaims. Plaintiff's motion to strike is therefore denied.

8

CONCLUSION

For the foregoing reasons, the court GRANTS defendants' motions for leave to amend and DENIES plaintiff's motion to strike. Defendants' amended answers and counterclaims are deemed filed as of December 18, 2006. Defendants' equitable estoppel defenses are stricken. Fact discovery will remain open until February 12, 2006. The parties will bear their own costs regarding depositions of fact witnesses who have not yet been deposed, and regarding re-depositions of witnesses regarding laches and/or patent misuse. In the event that plaintiff must re-depose any witnesses regarding inequitable conduct, defendants will bear the costs.

IT IS SO ORDERED.

Dated: Dec. 27, 2006

MARILYN HALL PATEL
United States District Judge
Northern District of California